**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
K.B.K. HUNTINGTON CORP.,

       Plaintiff,    **MEMORANDUM OF
               DECISION & ORDER**
   -against-      2:18-cv-03135 (ADS)(AKT)

HANOVER INSURANCE COMPANY A/K/A
HANOVER INSURANCE GROUP,

       Defendant.
---------------------------------------------------------X

**APPEARANCES:**

**McLaughlin & Stern, LLP**
*Attorneys for the Plaintiff*
1010 Northern Boulevard Suite 400
Great Neck, NY 11021
  By: James A. Bradley, Esq., Of Counsel.

**Riker Danzig Scherer Hyland Perretti LLP**
*Attorneys for the Defendant*
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962
  By: Michael J Rossignol, Esq.,
     Brooks Howard Leonard, Esq., Of Counsel.

**SPATT, District Judge**:

  On April 23, 2018, plaintiff K.B.K. Huntington Corp. (the "Plaintiff") brought this action seeking injunctive and declaratory relief against defendant Hanover Insurance Company a/k/a Hanover Insurance Group (the "Defendant") for alleged breaches of the Defendant's obligations to defend and indemnify the Plaintiff under an insurance contract for a property damage claim at the premises known as 410 Main Street, Huntington, Suffolk County, New York (the "Premises").

1

Presently before the Court is a motion by the Defendant, pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(b)(6) to dismiss the Complaint. For the following reasons, the Court grants the Defendant's motion to dismiss in its entirety.

## I. BACKGROUND

Unless otherwise stated, the following facts are drawn from the Complaint and documents attached to or incorporated by reference in the Complaint. These documents include an insurance policy covering the Premises (the "Policy"); a June 15, 2016 correspondence from the Defendant denying the Plaintiff's claim under the Policy (the "Denial Letter"); and a March 2012 Record of Decision issued by the New York State Department of Environmental Conservation ("DEC") (the "Record of Decision"). The Court construes the facts drawn from these documents in a light most favorable to the Plaintiff.

The Plaintiff owns the building and land at the Premises. The Plaintiff's President, Steven Birchell ("Birchell"), owned and operated a dry-cleaning business on the Premises between 1966 and 1976, when he sold his interest in the business. Since then, various individuals have continuously operated a dry-cleaning business on the Premises as tenants of the Plaintiff.

The Defendant is a property and casualty insurance company who provided the Plaintiff with general liability insurance covering the Premises.

On May 10, 1979, the Defendant issued the Policy to the Plaintiff, which covered any damage or accident arising out of the ownership, operation and maintenance of the Premises between May 10, 1979 and May 10, 1982 (the "Policy Period"). The Policy contains the following notice provision:

4. Insured's Duties in the Event of Occurrence, Claim or Suit:

(a)  In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the

    time, place and circumstances thereof and the names and addresses of the injured and of available witnesses shall be given by or for the insured to the Company or any of its authorized agents as soon as practicable.

 (b)  If a claim is made or a suit is brought against the insured, the insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative.

The Policy defines an "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

On October 6, 2003, the DEC issued a notice of claim (the "Notice of Claim") to the Plaintiff stating that it "had included the Premises in the Registry of Inactive Hazardous Waste Disposal Sites in New York State." The Notice of Claim provides that the DEC maintains the registry "of all inactive disposal sites suspected or known to contain hazardous wastes." The Plaintiff alleges that the activities of a tenant on the Premises during the Policy Period caused the hazardous condition described in the Notice of Claim.

In March 2012, the Plaintiff received the Record of Decision from the DEC. The Record of Decision identifies the Plaintiff as one of the Potentially Responsible Parties that has been "documented to date" and "who may be legally liable for the contamination at the site." The Record of Decision also states that the Plaintiff "declined to implement a remedial program when requested by the [DEC]." In addition, the Record of Decision provides that the Potentially Responsible Parties will be contacted to "assume responsibility for the remedial program."

On May 4, 2016, the Plaintiff served a notice of claim under the Policy on the Defendant. According to the Plaintiff, it failed to submit a claim before this date because it had not been aware of the Policy until early 2016 due to the deteriorating health of Birchell. Specifically, the Plaintiff alleges that Birchell had suffered from Parkinson's disease since approximately 1994 and operated

the Plaintiff in poor health, until his family took control in 2004, after receipt of the Notice of Claim. Consequently, the Plaintiff did not learn of the Policy's existence until it retained the services of a company named Policy Find, resulting in the discovery of the Policy in Birchell's "old business records."

On June 15, 2016, the Defendant denied the Plaintiff's claim under the Policy based, in part, on the late notice. Specifically, the Denial Letter cited the Record of Decision, stating that the Plaintiff "received a potentially Responsible Party Notice from the DEC and was requested to implement a voluntary remedial program for the site."

On November 22, 2016, the Plaintiff responded to the Denial Letter, to which the Defendant reiterated that it would not cover the Plaintiff's claim in a letter on January 5, 2017.

On March 19, 2018, the New York State Attorney General advised the Plaintiff that it intended to make a monetary claim against the Plaintiff for the costs of remediation at the Premises. The Plaintiff sent a copy of the letter to the Defendant, who responded on May 1, 2018 that they would not defend or indemnify the Plaintiff.

On May 29, 2018, the Plaintiff filed the Complaint seeking injunctive and declaratory relief requiring the Defendant to defend and indemnify the Plaintiff under the Policy.

## II. DISCUSSION

**A. THE LEGAL STANDARD.**

In considering a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiffs. *See, e.g.*, *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016); *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013); *Cleveland v. Caplaw*

4

*Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Bolt Elec., Inc. v. City of N.Y.*, 53 F.3d 465, 469 (2d Cir. 1995); *Reed v. Garden City Union Free Sch. Dist.*, 987 F.Supp.2d 260, 263 (E.D.N.Y. 2013).

Under the *Twombly* standard, the Court may only dismiss a complaint if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The Second Circuit has expounded that, after *Twombly*, the Court's inquiry under Rule 12(b)(6) is guided by two principles:

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and [d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S.Ct. 1937, 1940, 173 L.Ed.2d 868 (2009)).

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to survive a motion to dismiss. FED. R. CIV. P. 8(a)(2). Under Rule 8, a complaint is not required to allege "detailed factual allegations." *Kendall v. Caliber Home Loans, Inc.*, 198 F.Supp.3d 168, 170 (E.D.N.Y. 2016) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). "In ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) (quoting *Cooper v. Parsky*, 140 F.3d 433, 440 (2d Cir. 1998)). The Court "[is] not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.

As for exhibits attached to the motion to dismiss, "[f]ederal courts have complete discretion to determine whether or not to accept the submission of any material beyond the pleadings offered in conjunction with a Rule 12(b)(6) motion." *Amaya v. Ballyshear LLC*, 295 F. Supp. 3d 204, 216 (E.D.N.Y. 2018) (Spatt, J.); *see also Halebian v. Berv*, 644 F.3d 122, 130 n.7 (2d Cir. 2011) (noting that the Second Circuit has recognized "exceptions to Rule 12(b)(6)'s general prohibition against considering materials outside the four corners of the complaint"). In exercising its discretion, the Court may consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents "integral" to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in [the] defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Envtl. Servs., Inc. v. Recycle Green Servs., Inc.*, 7 F. Supp. 3d 260, 270 (E.D.N.Y. 2014) (Spatt, J.); (quoting *In re Merrill Lynch & Co.*, 273 F.Supp.2d 351, 356–57 (S.D.N.Y. 2003), *aff'd in part and vacated in part on other grounds sub nom. Dabit v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 395 F.3d 25 (2d Cir. 2005), *vacated on other grounds*, 547 U.S. 71, 126 S.Ct. 1503, 164 L.Ed.2d 179 (2006)).

**B. AS TO WHETHER THE PLAINTIFF STATED A VIABLE CLAIM UNDER THE POLICY.**

Under New York law, "compliance with the notice provisions of an insurance contract is a condition precedent to an insurer's liability" under policies with effective dates prior to January 17, 2009. *Am. Ins. Co. v. Fairchild Indus., Inc.*, 56 F.3d 435, 438 (2d Cir. 1995); *see also Indian Harbor Ins. Co. v. City of San Diego*, 972 F. Supp. 2d 634, 648 (S.D.N.Y. 2013) ("[T]he no-prejudice rule governs policies that were issued prior to January 17, 2009."). For such policies, if an insured fails to provide timely notice as required by the particular policy, then, absent a valid

reason for the delay, the insurer is under no obligation to defend or indemnify the insured. *See, e.g., Allcity Ins. Co. v. Jimenez*, 78 N.Y.2d 1054, 1055, 576 N.Y.S.2d 87, 88, 581 N.E.2d 1342, 1343 (1991). Notice provisions serve three purposes: first, they "allow the insurer to properly and adequately investigate and respond to claims"; second, they "serve as an aid to insurers allowing them to end or correct dangerous conditions"; third, they "allow insurers to estimate the amount of capital they need in reserve for future claims and aid in the detection of fraud." *Martinson v. Massachusetts Bay Ins. Co.*, 947 F. Supp. 124, 128 (S.D.N.Y. 1996)

The Defendant contends that the Plaintiff breached the Policy's notice provisions, vitiating the Plaintiff's right to recover for a claim under the Policy as a matter of law. The Court agrees, finding that that the Plaintiff failed to provide a timely notice without a valid reason for delay.

1. **As to When the Obligation to Provide Notice Arose.**

The Policy has two relevant notice provisions: 4(a), which requires written notice after an "occurrence" as defined by the Policy, and 4(b), which requires notice after "a claim is made, or a suit is brought against the insured." The parties agree that an "occurrence" happened at least as early as October 6, 2003, when the Plaintiff received the Notice of Claim. However, the Plaintiff appears to disagree that a "claim" occurred by the time the Plaintiff submitted its demand letter in 2016, because no suit or other litigation against the Plaintiff had yet commenced. The Court need not resolve the parties' dispute in this regard, because the Plaintiff concedes that it had to provide notice pursuant to the "occurrence" provision. Nevertheless, the Court also believes that a "claim" occurred, at the very least, when the Plaintiff received the March 2012 Record of Decision.

"[A] claim is an assertion by a third party that in the opinion of that party the insured may be liable to it for damages within the risks covered by the policy." *Fairchild Indus., Inc.*, 56 F.3d at 439. "It must relate to an assertion of legally cognizable damage, and must be a type of demand

7

that can be defended, settled and paid by the insurer." *Id.* Further, "[a] claim may be made without the institution of a formal proceeding" and regardless of "whether or not there is reason to believe that there actually is liability." *Id.*

In the Record of Decision, the DEC designated the Plaintiff as a Potentially Responsible Party ("PRP") "who may be legally liable for contamination at" the Premises. ECF 11-4 at 9. The Record of Decision elaborates that the Plaintiff "declined to implement a remedial program when requested by the Department" and could be "subject to legal actions by the state for recovery of all response costs the state has incurred." *Id.*

Although the Second Circuit has not explicitly held that the receipt of a PRP designation constitutes a "claim" under notice-of-claim provisions, it recognized that a "powerful argument can . . . be made" to that effect, because "an insurance company would want the opportunity to play a role in whatever proceedings might follow." *Fairchild Indus., Inc.*, 56 F.3d at 439. Given the litany of lower court cases treating potentially responsible party letters as "claims" under the notice provisions of analogous policies, the Court is comfortable in concluding that the Notice of Decision fell within Section 4(b) of the Policy. *See, e.g.*, *Martinson*, 947 F. Supp. at 130 (finding letter from the EPA informing plaintiffs "that they were 'Potentially Responsible Parties' for the costs of the investigation and cleanup of the contamination at" their premises triggered notice provision); *Avondale Indus., Inc. v. Travelers Indem. Co.*, 774 F. Supp. 1416, 1429 (S.D.N.Y. 1991) ("It is undisputed that Avondale was on notice that it had been implicated in pollution at the Site no later than January 1986, when the Louisiana Attorney General sent Avondale the 'potentially responsible party' letter."); *New York v. Ludlow's Sanitary Landfill, Inc.*, 50 F. Supp. 2d 135, 138 (N.D.N.Y. 1999) (finding PRP letter from the DEC asserted a claim because "it

8

unequivocally demonstrated that the State of New York intended to hold SMC liable for the remediation and damage at the site").

Therefore, the Court finds that the Policy required the Plaintiff to provide notice of its potential liability to the Defendant in a timely manner.

**2. As to the Timeliness of the Plaintiff's Notice.**

The notice-of-occurrence provision requires notice "as soon as practicable" in the event of an occurrence, whereas the notice-of-claim provision requires notice "immediately" after a claim. Although the two provisions use somewhat different standards of timeliness, the analysis in this case is for the most part the same for each clause. "[W]here a policy has an *immediate* notice of suit requirement, even a relatively short delay in providing notice violates that requirement." *Mark A. Varrichio & Assocs., Mark A. Varichio v. Chicago Ins. Co.*, 312 F.3d 544, 547 (2d Cir. 2002); *M.Z. Disc. Clothing Corp. v. Meyninger*, 23 F. Supp. 2d 270, 272 (E.D.N.Y. 1998) ("*[W]hen the policy requires immediate notification*, a delay of more than 10 days is considered unreasonable."). However, courts will forgive the absence of "immediate" action by the claimant, so long as the claimant carries the "burden of offering a reasonable excuse for the delay." *Ludlow's Sanitary Landfill, Inc.*, 50 F. Supp. 2d at 140. Similarly, clauses mandating notice "as soon as practicable" require a claimant to provide notice "within a reasonable time under all of the circumstances," taking into account any mitigating factors or excuses for the claimant's delay. *Mt. Hawley Ins. Co. v. Abraham Little Neck Dev. Grp., Inc.*, 825 F. Supp. 2d 384, 390 (E.D.N.Y. 2011) (Spatt, J.).

Here, the length of the Plaintiff's delay - four years in the case of the Record of Decision; thirteen years in the case of the Notice of Claim - is inordinately long. The Plaintiff admits that such lapses would ordinarily be untimely, but claims the circumstances justified its delay. With regard to the notice-of-occurrence clause, the Plaintiff argues that notice before May 4, 2016 was

9

not "practicable" because it was unaware of the Policy until early 2016. As for the notice-of-claim clause, the Plaintiff contends that its lack of knowledge constitutes a valid reason for delay. Thus, the ultimate issue under both provisions is whether the Plaintiff's ignorance about the Policy's existence in effect made its delay reasonable under the circumstances.

Essentially, the Plaintiff's argument is that its situation should be treated the same as a good-faith belief in non-liability or non-coverage. *See Strand v. Pioneer Cas.*, 270 A.D. 2d 600 (3d Dep't 2000); (excusing delay based on good-faith belief in non-coverage); *Reynolds Metal Co. v. Aetna Cas. & Sur. Co.*, 259 A.D.2d 195, 201, 696 N.Y.S.2d 563 (1999) (excusing delay based on good faith belief in non-liability). First, and foremost, that would only excuse the Plaintiff's delay under the notice-of-occurrence provision. The Plaintiff would still be without a legally recognized justification under the notice-of-claim clause, which "focuses on the actions of third parties" rather than "the insured's knowledge of events and reasonable conclusions based on that knowledge." *Fairchild Indus., Inc.* at 439 (rejecting the claim that a good-faith belief in non-liability excuses failure to comply with a notice-of-claim provision in a timely manner).

In addition, the Second Circuit rejected the Plaintiff's analogy in *Olin Corporation v. Insurance Company of North America*, 966 F.2d 718 (2d Cir. 1992), holding that a plaintiff's ignorance about the existence of a policy is an unreasonable justification for untimely notice as a matter of law:

> Even assuming that Olin did not locate the Hanover policies until November 1981, a lack of knowledge of an insurance policy does not excuse a delay in notification of an occurrence. It is true that "delay ... may be excused if there was a justifiable lack of knowledge of coverage." A justifiable lack of knowledge of coverage, however, is to be distinguished from a lack of knowledge of the existence of a policy. Notice of the content of coverage is within the control of an insurer, and it will thus generally bear some of the responsibility for an insured's lack of knowledge of coverage. An insurer has no power over an insured's retention of a policy, however, and bears none of the responsibility for an insured's loss of a policy. That being the case, we believe that it is the responsibility of the insured,

10

> not the insurance company, to keep track of which carriers have provided it with liability insurance. Although toxic torts may expose insurers to liability founded on acts that occurred decades before and cause their loss reserves to be inadequate, we see no reason to increase that burden by allowing insureds to give late notice because they lost the relevant policies.

*Id.* at 724–25. (citations omitted). As a result, the Plaintiff lacks a justifiable basis for sitting on its hands.

The Plaintiff attempts to distinguish *Olin Corp.* on the ground that the insured in that case simply lost the insurance policy and did not have the physical and mental problems present here. Although the Court has great sympathy for the hardships induced by Birchell's medical ailments, the Plaintiff cannot justifiably blame a delay of such great length entirely on his illness. "The determination of when the duty to give notice accrues requires an objective evaluation to ascertain whether the circumstances known to the insured at that time would have suggested to a reasonable person the possibility of a claim." *Mount Vernon Fire Ins. Co. v. Abesol Realty Corp.*, 288 F. Supp. 2d 302, 310–11 (E.D.N.Y. 2003). A medical ailment might justify a minor delay, in order to obtain treatment for an emergency for example. However, a person who chooses to continue operating a business over a long period of time, despite affliction from health issues, cannot use their situation as a shield against the basic responsibilities arising in the ordinary course of business.

The Plaintiff further contends that that the Second Circuit's decision in *Marlyand Casualty Company v. W.R. Grace and Company* 128 F.3d 794 (2d Cir. 1997) limits the scope of *Olin Corp.* so that it is inapplicable. However, *Maryland Casualty Company* is plainly distinguishable, because the case only addressed whether the potential for liability stemming conduct outside the policy period could trigger the requirement to give the insurer notice of a claim during the policy period. *Id.* at 800–801. It has no bearing on whether the Plaintiff's excuse in this case is legally cognizable.

Regardless, Birchell's medical situation would not excuse the Plaintiff's delay even were the Court to credit the Plaintiff's explanation. "In assessing the reasonableness of the delay, courts take into consideration the due diligence of the insured." *United States Underwriters Ins. Co. v. ITG Dev. Grp., LLC*, 294 F. Supp. 3d 18, 26 (E.D.N.Y. 2018); *see also United Nat. Ins. Co. v. 515 Ocean Ave., LLC*, 477 F. App'x 840, 844 (2d Cir. 2012) ("[I]t may be relevant on the issue of reasonableness, whether and to what extent, the insured has inquired into the circumstance of the accident or occurrence."); *Christiania Gen. Ins. Corp. of New York v. Great Am. Ins. Co.*, 979 F.2d 268, 275–76 (2d Cir. 1992) ("[T]he duty to provide notice ... begin[s] ... when an insured complying with its duty to use due diligence in investigating potential claims against it would believe from the information available that its policy would be involved.").

Accepting the factual allegations in the Complaint as true, Birchell's family assumed control of the Plaintiff in 2004 and apparently failed to even look for an insurance policy for over a decade, the whole time knowing the potential for liability. And once the Plaintiff began its search, it found the Policy in its own business records. In the Court's view, it would be profoundly unfair to permit the Plaintiff to avoid one of the most basic obligations of its agreement with the Defendant simply because the Plaintiff failed to exercise the minimal diligence necessary to discover the insurance policy. Further, it would erase the incentive for the insured to exercise diligence about potential claims against them, undermining the insurer's ability to adequately investigate and respond to claims. *See Martinson*, 947 F. Supp. at 128.

Therefore, the Court finds that the Plaintiff breached the Policy's notice provisions, vitiating its right to seek indemnification and defense under the Policy.

## III. CONCLUSION

For the foregoing reasons, the Court grants the Defendant's motion to dismiss the Complaint in its entirety and dismisses the Plaintiff's claims with prejudice. The Clerk of the Court is respectfully directed to close the case.

It is **SO ORDERED**:

Dated: Central Islip, New York

March 14, 2019

    /s/ Arthur D. Spatt

ARTHUR D. SPATT

United States District Judge